# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ABIGAIL J. GONZALEZ, | ) | 1:11-cv-01473-SKO |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING PLAINTIFF'S** |
| | ) | **SOCIAL SECURITY COMPLAINT** |
| v. | ) | |
| | ) | (Doc. 12) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## BACKGROUND

Plaintiff Abigail J. Gonzalez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. 42 U.S.C. §§ 401 *et seq.* The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 10.)

**FACTUAL BACKGROUND**

Plaintiff was born in 1956, has completed a general education equivalency certificate as well as some college, and previously worked as an office manager. (Administrative Record ("AR") 29, 32 ). Plaintiff contends that her ability to work is precluded by back and hip pain, trigger finger, depression, and anxiety. (AR 33.)

**A.    Medical Evidence**[2]

In November 2005, Plaintiff underwent a computed tomography ("CT") lumbar spine x-ray without contrast. (AR 389.) The alignment and vertebral body heights were deemed to be well maintained. (AR 389.) There was moderate disc space narrowing at L4-5, and remote bilateral pars defects were noted at L5. (AR 389.) The radiologist also indicated that the "disc spaces are examined axially level by level and demonstrate no significant disc herniations or osseous central canal stenoses." (AR 389.)

On April 23, 2006, Plaintiff underwent surgery to treat an incarcerated incisional hernia. (AR 235, 383.) In September 2007, Plaintiff underwent nerve conduction studies of the right median nerve and both ulner nerves. (AR 246.) The study results indicated normal findings. (AR 246, 347.)

Plaintiff has been treated by Dr. Samuel O. Leon since 2008. In July 2008, Dr. Leon referred Plaintiff for a CT scan of her lumbar spine. (AR 344.) The radiologist reported an impression of bilateral L5-S1 spondylolysis[3] and approximately 5 mm spondylolisthesis[3] with anterior slippage of L5 on S1 noted with disc space narrowing and degenerative change. (AR 344.) Other bodies and disc spaces of the upper four lumbar levels were "unremarkable," and it was noted that the study was consistent with the CT lumbar spine findings of November 2005. (AR 344.)

Dr. Leon also referred Plaintiff for a magnetic resonance imaging ("MRI") scan of her lumbar spine, which Plaintiff underwent on July 30, 2008. (AR 330-31, 333.) The radiologist who

---

[2] Plaintiff does not challenge the ALJ's determination with regard to her mental impairments (*see, e.g.,* Doc. 12, 14:26-13:1 ("plaintiff does not challenge the ALJ's findings regarding [her] mental limitations"); thus, only the medical evidence relevant to this appeal is summarized herein.

[3] Spondyloloysis refers to dissolution of a vertebra. *Dorland's Illustrated Medical Dictionary* 1780 (31st ed. 2007).

[3] Spondylolisthesis generally refers to the forward displacement of one vertebra over another, usually of the fifth lumbar over the body of the sacrum. *Dorland's Illustrated Medical Dictionary* 1779 (31st ed. 2007).

1  interpreted the findings listed an impression of mild L2-3, L3-4, and L4-5 central canal stenosis, and

2  he noted L5-S1 spondylolisthesis and associated spondylolysis.  (AR 331.)

3        On October 29, 2008, non-examining state agency consultant R. Fast, M.D., reviewed

4  Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment.

5  (AR 249.)  He opined that Plaintiff could (1) occasionally lift 20 pounds, and could frequently lift

6  10 pounds; (2) stand and/or walk about six hours in an eight-hour workday; (3) sit for about six

7  hours in an eight-hour workday; and (4) had an unlimited ability to push or pull.  (AR 250.)  He also

8  noted that Plaintiff was limited to only occasional climbing, balancing, stooping, kneeling,

9  crouching, or crawling.  (AR 252.)  Dr. Fast specifically noted that the 2008 CT and MRI results

10  documented lumbar disc disease including spondylolisthesis, but that no "HPN" or stenosis was

11  noted.  (AR 250.)  Dr. Fast indicated that Plaintiff's symptoms of pain were credible and noted Dr.

12  Leon's impression that Plaintiff was having an acute exacerbation of chronic severe low back pain.

13  (AR 250.)  Dr. Fast opined that Plaintiff should respond to treatment, but "should be restricted to

14  light work when she recovers from her acute flare."  (AR 250.)

15        On November 21, 2008, Plaintiff saw Greg Hirokawa, Ph.D., for a comprehensive psychiatric

16  evaluation.  (AR 269-73.)  Plaintiff reported a long history of depression, which had grown worse

17  due to health problems, coping with pain, financial issues, and an inability to work and do the things

18  she previously did.  (AR 269.)  She reported that she was fired from her job in March, but she stated

19  she did not know the reason for the employment termination.  (AR 270.)

20        Plaintiff reported to Dr. Hirokawa that she was able to perform some housework such as

21  cooking, sweeping, and mopping.  (AR 272.)  She explained that, on a typical day, she wakes up at

22  5:00 a.m., walks around, takes medication for her back, watches the news, sweeps, mops, drinks

23  coffee, lies down, watches movies, uses a heating pad, makes dinner, goes to bed, and watches more

24  television. (AR 272.)  She reported that she enjoyed watching television and playing video games.

25  (AR 272.)  Plaintiff also indicated she had a few friends, but she described the relationships as

26  distant.  (AR 272.)

27        Dr. Hirokawa indicated that Plaintiff's symptoms of depression and anxiety fell within the

28  mild range.  (AR 273.)  He found her communication skills to be fair; he noted that she is not

currently receiving any mental health treatment, but she is receiving psychotropic medication from her primary care physician. (AR 270, 273.) Dr. Hirokawa found Plaintiff mildly limited in her ability to understand and remember very short, simple instructions, to understand and remember detailed instructions, and to maintain attention and concentration. (AR 273.) Dr. Hirokawa also found Plaintiff mildly limited in her ability to do the following: (1) accept instructions from a supervisor and respond appropriately; (2) sustain an ordinary routine without special supervision; (3) interact with coworkers; and (4) deal with various changes in the work setting. (AR 273.) Dr. Hirokawa found Plaintiff to be mildly to moderately limited in her ability to complete a normal workday and workweek at a consistent pace without interruptions and withstand the stress of a work environment. (AR 273.) He opined that the likelihood of Plaintiff emotionally deteriorating in a work environment is minimal to moderate. (AR 273.)

On April 10, 2009, non-examining state agency physician Dr. A. Garcia, M.D., reviewed the medical records and confirmed Dr. Fast's opinion regarding Plaintiff's physical residual functional capacity. (AR 297-98.) Dr. Garcia noted the 2008 MRI results showing mild central canal stenosis. (AR 297.) He opined that Plaintiff remained capable of performing work at a light exertional level. (AR 298.)

On June 2, 2009, Dr. Leon completed a form regarding Plaintiff's lumbar spine impairment. (AR 299-302.) Dr. Leon diagnosed Plaintiff with chronic severe lower back pain, and he described Plaintiff's prognosis as poor. (AR 299.) He noted that a magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine indicated lumbar disc disease and stenosis. (AR 299.) He listed Plaintiff's symptoms as pain, depression from chronic pain, and insomnia. (AR 299.) He indicated that Plaintiff had a positive straight-leg raising test, muscle spasms, and muscle weakness. (AR 300.) Dr. Leon opined that Plaintiff could sit for only 20 minutes at one time, stand for 20 minutes at one time, and sit or stand and walk in combination less than two hours in an eight-hour workday. (AR 301.) He further opined that Plaintiff must walk every 45 minutes, and she could walk approximately 15 minutes at one time. (AR 301.) Dr. Leon also opined that Plaintiff should perform no prolonged sitting, and he indicated that Plaintiff should never lift more than 10 pounds, and could only occasionally lift less than 10 pounds. (AR 301.) Dr. Leon noted that Plaintiff was likely to be

absent from work as a result of her impairments or treatment more than four days per month. (AR 302.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration. (AR 64-67, 72-77.)  Consequently, on April 23, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 78-80.)  A hearing was held April 13, 2010, before ALJ Stephen W. Webster. (AR 26-47.)

**1.    Plaintiff's Testimony**

At the hearing, Plaintiff testified that her disability onset date was July 14, 2008.  (AR 29.) She currently lives in a house with her husband and her oldest son.  (AR 30.)  Plaintiff's back pain originally arose out of an incident where she lifted a patient when she worked at a hospital.  (AR 41.) In 2006, she was lifting a box at work and hurt her back again.  (AR 40.)  In her previous work as an office manager, which she performed until 2007, she frequently had to lift boxes that weighed approximately 25 to 30 pounds.  (AR 41.)

She has a driver's license, and she will occasionally take short trips, but she usually has someone take her to the doctor or the store.  (AR 30.)  She is able to attend to her personal grooming needs, she does some cooking and laundry as well as some dusting, and she washes the dishes. (AR 31.)  However, when Plaintiff cooks, it takes her all day because she has to rest.  (AR 36.) When she washes the dishes, she does it "little bits at a time" because she has hurt her back in the past when turning too fast while doing the washing.  (AR 36.)  She watches television approximately four to six hours per day, but she did not describe how she was positioned while watching television, e.g., whether she was sitting, standing, lying down, or some combination of those postures.  (AR 31.)

She experiences pain in her hip that extends down her leg.  (AR 33.)  She has "trigger finger" on her right hand and, as a result, the fingers lock up and cause pain making it difficult to use her right hand.  (AR 33.)  Her stomach bothers her from her medication, in part because she underwent gastric bypass surgery.  (AR 33.)  She sees Dr. Leon for treatment at least once a month; he provides pain shots and reviews Plaintiff's medication.  (AR 34.)  Plaintiff has a heating pad that she keeps

on her recliner, and she performs some physical therapy exercises; she also uses a transcutaneous electrical nerve stimulator ("TENS") unit.  (AR 34.)

Plaintiff can sit for approximately 20 to 30 minutes; she can stand for approximately 20 to 30 minutes.  (AR 35.)  She can walk about a block-and-a-half before she has to stop and rest, and she can lift approximately 5 pounds.  (AR 35.)

Plaintiff takes prescription drugs including Sertraline for depression, Propoxythene, which is a generic for Darvocet, and Carisolproul, which is a muscle relaxer.  (AR 37.)  The prescription drugs make her forgetful, drowsy, and woozy.  (AR 37.)  Plaintiff estimates that the pain in her lower back ranges from a six to an eight on a scale of one to 10, with 10 being the most painful.  (AR 37.)  She experiences pain and numbness in her left foot.  Her trigger finger makes it difficult to grasp things.  (AR 38.)  To alleviate her pain, she lies down with her legs elevated.  (AR 38-39.)  Plaintiff and Dr. Leon have discussed surgery, but he recommended that it should be reserved as a "last resort."  (AR 39.)

### 2.     Vocational Expert's Testimony

A vocational expert ("VE") testified at the hearing.  (AR 42-49.)  The VE testified that Plaintiff had acquired transferable skills in her past relevant work as an office manager which included data entry, drafting reports, using a computer and phones, filing, using office equipment, supervision, the ability to get along with people, train people, verbal communication, and written communication.  (AR 44.)  The ALJ posed several hypothetical individuals to the VE and inquired whether such hypothetical persons could perform work.

The ALJ hypothesized a person of the same age, education, and work background as Plaintiff who could (1) lift 20 pounds on occasion and 10 pounds frequently; (2) sit/stand and/or walk six hours of an eight-hour day; and (3) occasionally stoop, crouch, kneel, or crawl.  (AR 44.)  The VE testified that such a person could not perform office management work as Plaintiff had described her work, but she could perform work as an office manager as described by the Dictionary of Occupational Titles ("DOT").  (AR 45.)

In a second hypothetical, the ALJ asked the VE to consider a person limited in the same manner as in the first hypothetical, but who would need to be able to sit or stand at will.  (AR 45.)

The VE testified that such a person could not perform Plaintiff's past work as an office manager, but such a person could perform such work as described by the DOT.  (AR 45.)

In a third hypothetical, the ALJ asked the VE to assume a person of the same age and with the same education and work history as Plaintiff who would not be able to complete an eight-hour day or a forty-hour work week due to illness or the need for medical treatment.  (AR 45.)  The VE testified that such a person could not perform Plaintiff's past relevant work or any other work in the national economy.  (AR 45.)

### 3.      The ALJ's Decision

On May 26, 2010, the ALJ issued a decision that found Plaintiff not disabled from July 14, 2008, through the date of the ALJ's decision. (AR 13-21.) Specifically, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since July 14, 2008; (2) has the following severe impairment: degenerative disc disease with pain radiating to the left hip; (3) does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the Residual Functional Capacity ("RFC") to lift and carry 20 pounds occasionally, and 10 pounds frequently; sit, stand, and/or walk for six hours in an eight-hour workday, but Plaintiff must be able to sit or stand at will, with only occasional stopping, crouching, kneeling, or crawling; (5) has past relevant work as an office manager; and (6) can perform her past relevant work.  (AR 13-21.)

On June 22, 2010, Plaintiff sought review of this decision before the Appeals Council. (AR 9.)  The Appeals Council denied review on July 6, 2011. (AR 1-6.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981.

### C.      Plaintiff's Contentions on Appeal

On September 1, 2011, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.  Plaintiff seeks a reversal of the final decision of the Commissioner asserting that the ALJ failed to properly consider the opinion of Dr. Leon and erroneously found Plaintiff's lay statements not credible.  (Doc. 12.)

1

## **SCOPE OF REVIEW**

2      The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

3  by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

4  1998).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

5  of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

6  determine whether the Commissioner applied the proper legal standards and whether substantial

7  evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d

8  909, 911 (9th Cir. 2007).

9      "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*

10 *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such

11 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

12 *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,

13 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both

14 the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and

15 may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v.*

16 *Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## **APPLICABLE LAW**

18     An individual is considered disabled for purposes of disability benefits if he or she is unable

19 to engage in any substantial, gainful activity by reason of any medically determinable physical or

20 mental impairment that can be expected to result in death or that has lasted, or can be expected to

21 last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),

22 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or

23 impairments must result from anatomical, physiological, or psychological abnormalities that are

24 demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

25 such severity that the claimant is not only unable to do his previous work, but cannot, considering

26 his age, education, and work experience, engage in any other kind of substantial, gainful work that

27 exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

28

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### A.    The ALJ's Assessment of the Medical Evidence

Plaintiff disputes that the ALJ properly evaluated the medical evidence; she argues specifically that the ALJ failed to provide legally sufficient reasons to discount the opinion of her treating physician, Dr. Leon.

#### 1.    Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be given more weight than opinions of doctors who did not treat the claimant, because treating physicians are employed to cure and, therefore, have a greater opportunity to know and observe the claimant. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Smolen v.*

1   *Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  Opinions given by examining physicians are, in turn,

2   generally given greater weight than the opinion of a non-examining physician.  *Pitzer v. Sullivan*,

3   908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 750 F.2d 1450 (9th Cir. 1984).  Where an

4   examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide

5   "clear and convincing" reasons for rejecting the examining physician's ultimate conclusions.  *Lester,*

6   81 F.3d at 830.

7        Despite the presumption of special weight afforded to treating or examining physicians'

8   opinions, an ALJ may give less weight to an examining physician's opinion that conflicts with the

9   medical evidence, if the ALJ provides specific and legitimate reasons for discounting the opinion.

10   *See id*. at 830-31 ("[T]he opinion of an examining doctor, even if contradicted by another doctor, can

11   only be rejected for specific and legitimate reasons that are supported by substantial evidence in the

12   record.").  The ALJ can meet this burden by setting forth a detailed and thorough summary of the

13   facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.

14   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  A non-examining physician's opinion

15   alone, with nothing more, is not sufficient evidence to justify the rejection of an examining

16   physician's opinion.  *Lester*, 81 F.3d at 831 (citing *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d

17   at 1456).  However, the ALJ can reject the opinion of an examining physician based on the testimony

18   of a non-examining medical advisor <u>and</u> on substantial evidence in the record.  *See, e.g.*, *Magallanes*

19   *v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.

20   1995); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir 1995).

21       **2.**      **The ALJ's Assessment of Dr. Leon's Opinion**

22        Dr. Leon's opinions about Plaintiff's physical limitations were contradicted by the non-

23   examining state agency physicians.  (*see* AR 249-52, 297-98.)  Therefore, to reject Dr. Leon's

24   opinions, the ALJ was required to state specific and legitimate reasons supported by substantial

25   evidence.  *Lester*, 81 F.3d at 830-31.  Dr. Leon opined Plaintiff had chronic severe low back pain,

26   her prognosis was poor, she could not lift weight greater than 10 pounds and could only occasionally

27   lift weight less than 10 pounds; she could sit, stand and/or walk less than two hours in an eight-hour

28   workday; she could never twist, stoop, bend, crouch, squat, or climb ladders or stairs; and she would

1  miss work more than four days per month. (AR 18.) The ALJ gave this opinion little weight

2  because it was rendered in a check-box form which was not supported by objective evidence overall,

3  nor were there any clinical findings in Dr. Leon's treating records that supported these limitations.

4  (AR 18.) Specifically, the ALJ reasoned that the objective findings reveal only mild central canal

5  stenosis at the L2-3, L3-4 and L4-5 levels and spondylolisthesis at the L5-S1 level. (AR 18.)

6  Further, the ALJ noted that Dr. Leon's own treating records do not identify objective findings to

7  support the extent of the limitations he opined Plaintiff suffered. (AR 18.)

8      As it pertains to the ALJ's rejection of Dr. Leon's opinion because it lacked support of the

9  objective findings, Plaintiff argues that the ALJ's reasoning lacks specificity under *Embrey v. Bowen*,

10  949 F.2d 421, 421-22 (9th Cir. 1988). The Commissioner asserts that the ALJ did not summarily

11  reject Dr. Leon's opinion without reference to any specific objective medical evidence; rather, the

12  ALJ cited the 2008 MRI findings made by a radiologist that appeared to undercut the restrictive

13  limitations opined by Dr. Leon.

14      The ALJ discussed the relevant objective medical findings. The ALJ noted that a July 2008

15  CT scan of Plaintiff's lumbar spine revealed bilateral L5-S1 spondylosis and degenerative change

16  at this level, but other bodies and disc spaces of the upper four lumbar levels were unremarkable.

17  (AR 18, 344.) The ALJ considered that these July 2008 CT findings were determined by the

18  interpreting radiologist to be consistent with the CT scan of Plaintiff's lumbar spine taken in

19  November 2005. (AR 344.) Further, July 2008 MRI results revealed only mild L2-3, L3-4, and L4-5

20  central canal stenosis and L5-S1 splondylolisthesis and associated spondylolysis.  (AR 330.) In

21  setting forth what medical findings or testing supported his opinion, Dr. Leon noted the 2008 MRI

22  findings showing lumbar disc disease and stenosis (AR 299), but failed to discuss how they

23  supported the extent of the limitations he opined with regard to Plaintiff's functional abilities. In this

24  case, unlike in *Embrey*, the ALJ's discussion of the objective medical evidence did not lack

25  specificity.

26      Moreover, the ALJ also considered that Dr. Leon's own treating records failed to identify

27  objective findings to support the extent of the limitations opined. (AR 18.) In conjunction with a

28  lack of clinical findings in his own treating records supporting the limitations opined, the ALJ found

1   Dr. Leon's 2009 opinion to be cursory, noting that it was presented in check-box form.  An ALJ may

2   reject an opinion that is not well-supported or is conclusory.  *See Batson v. Comm'r of Soc. Sec.*,

3   359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are

4   conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

5   Further, where a treating physician's opinion lacks the support of objective medical findings or

6   rationale to support the opinion, the ALJ is entitled to reject that opinion.  *Tonapetyan v. Halter*,

7   242 F.3d 1144, 1149 (9th Cir. 2001).  While Dr. Leon noted that Plaintiff had a positive straight leg

8   raise test, and muscle spasms and weakness (AR 300), in light of the mild objective findings on the

9   CT and MRI scans, there was no rationale provided to support why, for example, Plaintiff's

10  prognosis was poor, or why she was precluded from lifting more than 10 pounds, or why she would

11  miss more than four days per month as a result of her impairments and treatment.  While Dr. Leon's

12  subjective professional judgment about Plaintiff's level of functioning must be considered, *see*

13  *Embrey*, 849 F.2d at 422 ("subjective judgments of treating physicians are important, and play a part

14  in their medical evaluations"), where a physician's ultimate conclusions are not well-supported or

15  explained, the ALJ is not required to adopt them.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

16  2002).

17        Plaintiff also asserts that by determining that the degree of limitation opined by Dr. Leon was

18  not supported by the objective medical evidence, the ALJ was impermissibly using his own judgment

19  to interpret raw medical data.  Plaintiff cites several cases for the proposition that an ALJ may not

20  substitute his interpretation of laboratory reports for that of a physician.  *See, e.g., Ferguson v.*

21  *Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).  However, it was a radiologist, not the ALJ, who

22  determined that Plaintiff's stenosis was "mild."  (*See* AR 331.)  Dr. Leon acknowledged these

23  findings (AR 299), but he did not explain why "mild" stenosis or consistent CT scans between 2005

24  and 2008 provided a basis for the limitations imposed.  The consistency between the 2005 and 2008

25  CT scans, as determined by the radiologist, is difficult to square with Dr. Leon's opinion about

26  Plaintiff's functioning.  Plaintiff continued to work until 2008, and these findings do not demonstrate

27  how she became worse in 2008 such that she is now limited to the degree that Dr. Leon opined.

28  Additionally, while Dr. Leon noted that Plaintiff has stenosis, he did not account for the fact that the

2008 MRI showed only *mild* central canal stenosis, as described by the radiologist.  The ALJ was entitled to consider the radiologist's findings and compare how those doctor's findings supported Dr. Leon's ultimate conclusions about Plaintiff's physical limitations.  *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (it is the province of the ALJ to resolve ambiguities and/or conflicts in the medical evidence).

Further, as the ALJ noted, there is an absence of other clinical findings in Dr. Leon's treating notes that would explain or support the extent of the limitations he opined.  The ALJ is not required to accept or adopt any physician's opinion that is not well-supported.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide clear and convincing reasons for ALJ to reject treating physician's opinion); *Thomas*, 278 F.3d at 957 (ALJ may reject physician's report if it contains inconsistencies, is conclusory, or is inadequately supported by clinical findings).

Plaintiff argues that the ALJ impermissibly disregarded Dr. Leon's opinion in favor of Dr. Garcia's opinion.  Plaintiff asserts that the opinion of Dr. Garcia does not constitute substantial evidence because he is a non-examining physician whose opinion is predicated on the same objective medical evidence as that of Dr. Leon, a treating physician.  Plaintiff cites *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) where the court held that, when an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence.  In *Orn*, the court reasoned that a treating physician's opinion could not be rejected on the basis of a non-treating physician's opinion when both opinions were predicated on the same clinical findings and differed only in their conclusions.  Under those circumstances, the non-treating physician's opinion could not *alone* constitute substantial evidence to justify rejection of a treating physician's opinion.  This case, however, is distinguishable from *Orn* because the ALJ permissibly rejected Dr. Leon's opinion on several grounds; the reasons for rejecting Dr. Leon's opinion were not predicated on the opinions of Drs. Fast and Garcia, two non-examining physicians.  Even assuming the ALJ had relied on the opinion of Dr. Garcia in rejecting Dr. Leon's opinion, this was not the sole reason for discounting Dr. Leon's opinion.  *See Morgan v. Apfel*, 169 F.3d 595, 602 (9th Cir. 1999) (the rejection of the opinion of an examining or

1  treating physician may be based *in part* on the testimony of non-examining medical advisor, when

2  consistent with other independent evidence in the record).

3     The reports of consultative non-examining physicians solicited by the Secretary may serve

4  as substantial evidence. *See Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984); *cf. Richardson v.*

5  *Perales*, 402 U.S. 389, 402-03 (1971) (such written reports are neither hearsay because written, nor

6  biased and are admissible).  The opinion of Dr. Garcia, a non-examining physician, is supported by

7  and consistent with other evidence in the record.   *Lester*, 81 F.3d at 830-31; *see also Andrews*,

8  53 F.3d at 1041.  For example, the objective medical findings set forth by two different radiologists

9  are generally mild to moderate. (AR 344).  Plaintiff's July 2008 CT scan revealed "L5 spondylolysis

10  of the pars at the L5 level with only minimal 4-5 mm slippage of L5 on S1." (Doc. 344.)  The

11  radiologist determined these findings were consistent with the previous November 2005 CT of

12  Plaintiff's lumbar spine; a fact that Dr. Leon does not address.  (AR 344.)  According to the

13  radiologist, Plaintiff's July 2008 MRI showed only *mild* central canal stenosis. (AR 331.)  The ALJ

14  found the limitations Dr. Garcia imposed to be more consistent with these objective results, as

15  presented by the interpreting radiologists.

16     Plaintiff is correct that the opinion of Dr. Fast, another non-examining state agency physician,

17  does not constitute substantial evidence to support the ALJ's RFC because it is not consistent with

18  the medical evidence in the record. Dr. Fast stated that the record contained no evidence of stenosis.

19  (AR 250.) However, Plaintiff's July 2008 MRI denoted mild central canal stenosis, which Dr. Garcia

20  acknowledged.  It is not clear to what degree Dr. Fast's opinion regarding Plaintiff's abilities was

21  predicated on his mistaken characterization of the objective medical evidence.  Thus, Dr. Fast's

22  opinion has no evidentiary value and cannot constitute substantial evidence.  However, Dr. Garcia

23  also reviewed the record, acknowledged the July 2008 MRI finding of mild central canal stenosis,

24  and still determined that Plaintiff was able to perform light work.  Because Dr. Garcia's opinion is

25  consistent with other evidence in the record, it may be considered substantial evidence.  The ALJ's

26  reliance on Dr. Fast's opinion as substantial evidence to support the RFC assessment is harmless

27  error in light of Dr. Garcia's opinion, upon which the ALJ also relied.  *See Batson*, 359 F.3d at 1197

28  (error harmless where it did not negate validity of the ALJ's ultimate conclusion); *see also Stout v.*

1    *Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006) (defining harmless error as

2    such error that is "inconsequential to the ultimate nondisability determination").

3    **B.      The ALJ's Credibility Determination was Legally Sufficient**

4          Plaintiff argues that the ALJ failed to provide clear and convincing reasons to discredit her

5    testimony regarding her pain and limitations.  (Doc. 12, 11:14-15:21.)   Specifically, Plaintiff

6    contends that the ALJ was incorrect that the objective medical evidence failed to support Plaintiff's

7    limitations, and, even to the extent the evidence did offer such support, the ALJ was not qualified

8    to interpret the raw medical findings to make that determination.  (Doc. 12, 12:25-13:16.)  Plaintiff

9    also argues that the ALJ misrepresented how Plaintiff performs her daily activities in finding that

10   the extent of her activities establishes she is not as limited as she testified.  (Doc. 12, 13:17-14:21.)

11         The Commissioner asserts that the ALJ provided several permissible reasons for finding

12   Plaintiff not entirely credible about the extent of her pain and limitations.  The Commissioner

13   contends that the ALJ permissibly considered Plaintiff's ability to work after she injured her back

14   in 2006, well before the alleged onset date of disability in July 2008.  The ALJ also appropriately

15   considered the consistency of the findings between the 2005 CT scan and the 2008 CT scan even

16   though Plaintiff claimed she was injured during that time period and became so disabled she was

17   unable to work.  (Doc. 13, 10:4-5.)  The Commissioner argues that the ALJ's consideration of the

18   CT and MRI scans was not based on his own lay interpretation; rather, it was a radiologist who

19   interpreted the results and provided the findings which the ALJ considered. (Doc. 13, 10:5-12.) The

20   Commissioner also asserts that the ALJ properly considered Plaintiff's daily activities and found

21   them inconsistent with her allegations of disability.  Finally, the Commissioner argues that the ALJ

22   permissibly relied on a lack of objective support for Plaintiff's pain allegations.  (Doc. 13, 10:27-

23   11:12.)

24         **1.      Legal Standard**

25         In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must

26   engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ

27   must determine whether the claimant has presented objective medical evidence of an underlying

28   impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*

The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### 2.     Analysis

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent Plaintiff alleged symptoms greater than those reflected by the RFC assessment. (AR 15.) Specifically, the ALJ provided the following discussion of Plaintiff's credibility:

> Reflecting negatively on the claimant's credibility, objective findings revealed no worsening of the claimant's degenerative disk disease post-alleged onset date. The claimant said she injured her back in 2006 lifting boxes of cups and settled a workers' compensation claim. According to her own testimony and report to the consultative psychologist, she was able to work after that, until July 2008, when she was fired (Exhibit 8F, page 5). She reported she was stressed due to her "uncertainty of income" and that she was fired without unemployment insurance (Exhibits 2E, page 8, 8F, page 5). The claimant's ability to perform a variety of activities of daily living clearly refute the severe limitations the claimant alleges and which are listed in the opinion evidence provided by Dr. Leon (Exhibits 14F and 15F). She can drive, cook, sweep, mop, embroider, read, do word puzzles, play video games, and sew (Exhibits 2E, page 5; 8F, page 4). On mental status examination, consultative psychologist Dr. Hirokawa reported that her mood was only mildly depressed, with no complaints of problems with sleeping and she reported she is around her family daily and visited

1   with her sister and son about once a week (Exhibits 2E, page 5; 8E, page 4). Further,
2   she was functioning well without any mental health treatment and Dr. Hirokawa did
    not note any observation of her being in pain during the evaluation (Exhibit 8F, page
3   5). Finally, treating records do not support any physical or mental impairments that
    would restrict her ability to walk to the bathroom, as she testified at the hearing.

4   (AR 20.)

5              a.      The ALJ's Consideration of the Objective Medical Evidence

6        Plaintiff asserts that the objective medical evidence establishes a worsening of her

7   degenerative disc disease, contrary to the ALJ's finding that the objective evidence revealed no

8   worsening of her degenerative disc disease post-alleged onset date. Plaintiff also asserts that, even

9   if the evidence demonstrates her condition was static, the ALJ is not a medical expert equipped to

10  interpret the raw medical data in functional terms. (Doc. 12, 12:25-12:16.)

11       The Commissioner argues that Plaintiff's consistently mild CT and MRI scans, as well as Dr.

12  Leon's assessment that Plaintiff's back pain was stable in response to pain medication and muscle

13  relaxants, supported a finding that the objective medical evidence, in conjunction with other

14  evidence, did not support Plaintiff's testimony of disabling pain. The Commissioner also contends

15  that it was a radiologist who determined the 2008 CT scan was consistent with the November 2005

16  CT scan; thus, the ALJ did not impermissibly interpret raw medical data to determine that Plaintiff's

17  condition was static between 2005 and 2008.

18       The ALJ's determination that the objective medical evidence available does not establish a

19  worsening of Plaintiff's degenerative disc disease is supported by substantial evidence. This was

20  confirmed by the radiologist who determined that Plaintiff's CT scans from 2005 to 2008 were

21  consistent. (AR 344 ("The study is consistent with CT lumbar spine findings of 11/16/2005, earlier

22  study").) Plaintiff argues that the radiologist must be incorrect because the 2008 CT scan uses the

23  words "spondylolisthesis and "spondylosis" and those descriptors are absent from the 2005 CT scan.

24  Plaintiff's lay interpretation of the CT scan results does not trump that of the radiologist, and the ALJ

25  was entitled to rely on the uncontradicted opinion of the radiologist regarding the consistency of

26  these CT scans.

27       Moreover, Plaintiff's argument that "mild" stenosis on the 2008 MRI scan reflects a

28  worsening of her degenerative disc disease as compared to 2005 is also lay conjecture. First, the

2008 CT scan does not show stenosis while the 2008 MRI shows stenosis. Thus, CT and MRI scans do not necessarily reveal all the same information. As such, the absence of stenosis on the 2005 CT scan does not necessarily mean that there was no stenosis in 2005; it means only that the CT scan did not detect it. Accordingly, there is no logical basis to conclude the absence of stenosis on the 2005 CT scan and the presence of stenosis on the 2008 MRI denotes a new or worsening condition.

Second, even if there were a 2005 MRI from which a comparison could be drawn to the 2008 MRI, only a medical professional, such as a radiologist, would be competent to determine the consistency of those reports. Here, the ALJ considered the radiologist's determination that the 2005 and the 2008 CT scans were consistent. Thus, the ALJ was not simply comparing the CT scans and offering his own lay interpretation of the results – he was relying on the opinion of a medical expert. The ALJ was entitled to rely on that opinion to find that the objective medical evidence available and reviewed by a radiologist does not indicate any worsening from 2005 to 2008. Additionally, standing alone, the 2008 MRI provides no information about the *progression* of Plaintiff's condition. The fact that the objective medical evidence does not show a worsening of Plaintiff's degenerative disc disease between 2005 and 2008 tends to detract from Plaintiff's statements that she became debilitated with low back and hip pain in 2008. However, the lack of objective medical evidence to corroborate the extent of Plaintiff's pain is not, by itself, a sufficient ground to discredit Plaintiff's pain testimony. Thus, the Court considers the other evidence considered in conjunction with the objective medical evidence on which the ALJ relied in assessing Plaintiff's credibility.

**b.    The ALJ's Consideration of Plaintiff's Daily Activities**

In considering Plaintiff's daily activities, Plaintiff argues that the ALJ misrepresented how she performs these activities. (Doc. 12, 13:17-14:2.) Plaintiff asserts that her daily activities are minimal and sporadic and she spreads out her activities over the course of the day. (Doc. 12, 13:23-25.) For example, when she cooks, Plaintiff does so over the course of a whole day, taking plenty of breaks.

The ALJ's consideration of Plaintiff's testimony, however, noted not just that the extent of her daily activities seemed out of proportion to her claims of disabling pain, but that her testimony about how and what daily activities she performed was inconsistent. For example, Plaintiff testified

1   that she was right-handed, but because her fingers tend to lock up, she has difficulty using her right

2   hand.  (AR 33.)  Yet, Plaintiff testified to a number of daily activities that would require the

3   repetitive use of her right hand, including cooking full meals, chopping ingredients, and playing

4   video games – which the ALJ noted.  (AR 20, 36.)  The ALJ also considered the daily activities

5   Plaintiff stated she could perform in an Adult Function Report.  (AR 152.)  In that report, Plaintiff

6   stated that she could not use a knife for fear of cutting herself and she was unable to prepare food

7   alone because she would sometimes leave the stove running.  (AR 152.)  Yet, that description

8   conflicts with Plaintiff's hearing statements that she could cook full meals over the course of a day

9   and that she chopped ingredients for meals.  (AR 36.)

10          The ALJ was entitled to consider these inconsistencies and weigh them negatively in

11  considering Plaintiff's credibility.  While the ALJ was incorrect in noting that Plaintiff sewed as part

12  of her daily activities (which Plaintiff stated she no longer did because of concentration problems),

13  the ALJ did appropriately note several inconsistencies between Plaintiff's statements about her daily

14  activities and her stated limitations that the ALJ was entitled to consider in reaching a credibility

15  determination.  Not only do these types of inconsistencies have bearing on Plaintiff's testimony about

16  the extent of her specific limitations, such as her difficulty using her right hand or her ability to cook

17  on her own, these inconsistencies are also relevant to assessing her overall credibility in reporting

18  her pain and limitation.

19          The ALJ also considered that during the course of Plaintiff's examination with Dr. Hirokawa,

20  she was not noted to be in any pain even though she testified at the hearing that her general pain level

21  was always at a six to an eight on a scale of 1 to 10, even with medication.  (*Compare* AR 37 *with*

22  AR 269-73.)  While this is not clear and convincing evidence in and of itself as to a lack of

23  credibility, it is relevant and a factor that the ALJ was entitled to consider in conjunction with other

24  credibility considerations.

25          Finally, Plaintiff asserts that the ALJ impermissibly rejected her statement that, when "the

26  pain gets so severe," Plaintiff can "hardly walk to the bathroom."  (AR 20, 43.)  In considering this

27  statement, the ALJ determined that "treating records do no support any physical or mental

28  impairments that would restrict her ability to walk to the bathroom, as she testified at the hearing."

1   (AR 20.) Plaintiff asserts that a lack of medical findings to corroborate this statement cannot provide

2   the sole basis to discredit the testimony.

3         Plaintiff did not actually testify that she is unable to walk to the bathroom; the context of this

4   statement indicates that Plaintiff was attempting to exemplify the extent of her pain when it was most

5   severe.  The ALJ offered several reasons for discounting Plaintiff's statements about the degree of

6   her pain, including a lack of objective medical evidence in conjunction with inconsistent statements

7   about her daily activities.  This was a sufficient basis to conclude that Plaintiff's testimony about the

8   severity of her back pain in this regard was overstated.

9         **c.**    **The ALJ's Consideration of Plaintiff's Work History**

10        The ALJ also considered Plaintiff's work history in considering her credibility.  Although

11  Plaintiff claimed that her back pain was aggravated by an injury she suffered in 2006 carrying boxes

12  of cups at work, she continued to work after that time until March 2007, when she was fired.

13  (AR 270-71.) Plaintiff told Dr. Hirokawa she did not know the reasons for the termination of her

14  employment.  (AR 270.)  She then worked for a month from February 2008 to March 2008, when

15  she was fired again.  (AR 160, 271.)  She sought treatment for her back pain in July 2008, and she

16  filed an application for disability in September 2008, alleging an onset date of July 14, 2008.

17        The ALJ may consider a claimant's work history, including the reasons a claimant separated

18  from her employment, in considering her credibility.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th

19  Cir. 2001).  Here, Plaintiff was reportedly fired from her work in March 2008, but waited until July

20  2008 to obtain medical treatment from Dr. Leon.  Her CT scan results between 2005 and 2008 were

21  consistent, and she continued to work during that time period – the medical evidence and Plaintiff's

22  ability to work during this time period does not tend to reflect a worsening of her condition.  (*See*

23  AR 20.)  Additionally, Plaintiff claimed the injury that aggravated her back condition occurred in

24  2006, but she continued to work until early 2008, claiming the onset date of her disability was July

25  2008.  The ALJ was entitled to draw negative inferences from this evidence and conclude that

26  Plaintiff was unable to work for reasons other than because of disabling pain or limitations.  *See*

27  *Bruton*, 268 F.3d at 828.

28

In sum, the ALJ offered clear and convincing reasons to discredit Plaintiff's testimony regarding the extent of her pain and limitations, noting not only a lack of objective medical evidence to corroborate the extent of Plaintiff's asserted pain and limitation, but also Plaintiff's inconsistent statements and daily activities as well as Plaintiff's work history that, taken as a whole, undercut Plaintiff's credibility.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Abigail J. Gonzalez.


IT IS SO ORDERED.

**Dated:**    **January 29, 2013**                **/s/ Sheila K. Oberto**
                                        UNITED STATES MAGISTRATE JUDGE